**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| SHUAYB GREENAWAY, | : | |
|     **Plaintiff,** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 25-CV-5727** |
| | : | |
| THOMAS K. FINLETTER SCHOOL, | : | |
| *et al.*, | : | |
|     **Defendants.** | : | |

**MEMORANDUM**

**SCOTT, J.**                                                                  **JANUARY 7, 2026**

Shuayb Greenaway filed this *pro se* action alleging his constitutional rights were violated

in connection with a child custody proceeding in the Philadelphia Family Court and his minor

child's education. Greenaway seeks leave to proceed *in forma pauperis*. For the following

reasons, leave to proceed *in forma pauperis* will be granted, and the Complaint will be

dismissed.

## I.    FACTUAL ALLEGATIONS[1]

Greenaway names the following Defendants in his Complaint: Philadelphia Court of

Common Pleas Judges Holly Ford and Daniel Sulman, Melissa Prentice, Thomas K. Finletter

School, School District of Philadelphia, Pennsylvania Department of Education's Bureau of

---

[1] The factual allegations are taken from Greenaway's Complaint ("Compl."), which
consists of forty-four typewritten pages, including a list of exhibits, although the actual exhibits
were not attached. (ECF No. 2.) The Court considers the entirety of the submission to constitute
the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.
The Court may consider matters of public record when conducting a screening under § 1915.
*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court also notes that
throughout his Complaint, Greenaway makes arguments to a hypothetical motion to dismiss and
cites to case law and statutes in support of these assertions. The Court need not credit these
irrelevant legal assertions.

Special Education Division of Compliance Monitoring and Planning, Edward Davies, Stephanie Conklin, Georgiana Clark, Lauren Harrow, and Katrina Sexton. (*See* Compl. at 3-4.)

Greenaway's allegations stem from a child custody proceeding in the Philadelphia Family Court involving his minor child, N.G, and N.G's education in the Philadelphia School District, presumably at Defendant Thomas K. Finletter School (the "School"). (*Id*. at 3-6.) He identifies Defendant Prentice as N.G.'s mother, who is also the opposing party in the underlying child custody case.[2] (*Id*. at 3.) Greenaway alleges that in August 2015, he "filed a complaint for custody of [N.G.], and the parties entered into an agreement for shared legal custody." (*Id*. at 9.) He further alleges that on January 19, 2016, "paternity was acknowledged, and a Final Custody Order by Agreement was entered on January 20, 2016." (*Id*.) He claims that in October 2017, "a court order was entered granting shared legal custody, which explicitly required both parents to participate in major decisions affecting [N.G.]'s welfare, including medical, educational, and religious matters." (*Id*. at 10.) Although Prentice "was granted sole authority over school-related decisions," he asserts "this authority did not extend to medical evaluations, such as those for Autism." (*Id*.) He claims N.G. was "first classified with Autism in 2016 by the Drexel Autism Institute," being diagnosed after an evaluation on November 8, 2016, which was later confirmed on reevaluation in 2017. (*Id.* at 9-10.) He alleges by "authorizing the Autism evaluation without [his] consent, Defendant Prentice exceeded her authority under the October 2017 court order and violated the principles of shared legal custody." (*Id*. at 10.)

Greenaway asserts that on August 29, 2018, "a Final Order by Agreement was entered, establishing a joint custody arrangement between [him] and Defendant Prentice, specifically requiring both parents' involvement in educational decisions regarding [N.G.]." (*Id*.) He alleges

---

[2] *See Greenaway v. Prentice*, 0C1213453 (Phila. Fam. Ct.)

"the School District of Philadelphia independently evaluated and diagnosed N.G. with Autism without [his] knowledge or consent, despite the joint custody agreement requiring consent from both parents for educational decisions." (*Id.*) Specifically, Defendant Conklin allegedly "completed a Functional Behavior Assessment (FBA) for [N.G.], which included diagnoses of Autism, Other Health Impairment (OHI), and Speech Language Impairment without [his] knowledge or consent, violating [the Individuals with Disabilities Education Act ("IDEA")]'s procedural safeguards requiring parental participation." (*Id.* at 11.) He next alleges on October 31, 2018, Prentice signed an Individualized Education Program ("IEP") contract without his "consent or knowledge, despite the joint custody agreement requiring consent from both parents, and the School District accepted this signature without requiring [his] consent." (*Id.*) He claims that the FBA falsely described N.G.'s behavioral issues and that excluding Greenaway "from educational decision-making resulted in N.G. missing critical early intervention opportunities." (*Id.*)

Greenaway filed a complaint in 2020[3] related to his exclusion from N.G.'s IEP process and claims Defendant Sexton failed to conduct a thorough investigation. (*Id.* at 14.) He also alleges that in September 2020, Defendant Davies, a Special Education Director, "deliberately misrepresented facts to [him] by stating there had been no diagnosis of Autism and no change in classifications, which the 2018 FBA proves was false, demonstrating a pattern of deception by educational officials." (*Id.* at 13.) Based on his claims that the School District "systematically failed to include [him] in important decisions regarding [N.G.], including incidents of bullying

---

[3] Greenaway does not specify where this complaint was filed. He identifies Sexton as the Chief of the Division of Monitoring and Improvement for the Pennsylvania Department of Education, Bureau of Special Education. (*See* Compl. at 4.) The Court presumes the complaint he references was filed with her office.

3

and changes in classroom settings," he filed a complaint pursuant to the Family Educational and Privacy Rights Act ("FERPA") with the Department of Education ("ED"). (*Id.* at 11.) He alleges that in March 2022, a Resolution Agreement was established between the School District and the ED to resolve his FERPA complaint, requiring the School District to provide Greenaway with access to N.G.'s educational records, but it has not complied. (*Id.* at 12.) He asserts between 2023 and 2024, he has continued to advocate for N.G.'s rights, "making repeated requests for information and filing additional complaints with various agencies." (*Id.* at 15.) For instance, he claims he contacted Defendant Harrow, identified as the Assistant Principal, about bullying incidents and she responded, "that the school's policy was to address concerns directly with the parent who raised them, leaving it up to that parent to communicate with the other parent, effectively institutionalizing the exclusion of joint custody parents from educational decisions." (*Id.* at 13.) He then learned on April 2, 2024, N.G. had been involved in bullying incidents and transferred to a new classroom without Greenaway's knowledge or input. (*Id.* at 14.) More recently, he claims supervision under Defendant Clark, identified as the School's Special Education Compliance Manager, (*id.* at 4), has "escalated" the situation. (*Id.* at 14.) For instance, on February 19, 2025, Greenaway expressed concern, presumably to Clark, "that an IEP meeting was held, and decisions were made, without [his] knowledge or participation." (*Id.*) He claims he has a legal right to participate. (*Id.*) He also claims that throughout 2025, Clark has "engaged in systematic deception regarding [N.G.]'s curriculum" and believes "N.G. was being denied access to a grade-level curriculum." (*Id.* at 15.) He submitted a formal records request under IDEA and FERPA on June 5, 2025, and after the School District failed to comply, (*id.*), he issued a formal Notice of Default on June 27, 2025. (*Id.* at 12.) He claims the failure to

4

comply demonstrates the School District's "ongoing violation of federal law and deliberate obstruction of parental rights." (*Id.* at 15.)

Shifting the focus back to the allegations regarding the underlying child custody case, Greenaway claims Prentice filed a lawsuit in 2022, alleging that he was obstructing N.G.'s Autism evaluation.[4] (*Id.* at 12.) He claims that during the custody proceedings, Judge Ford suppressed critical documents he provided to show N.G. had already been diagnosed with Autism, which deprived him of "his right to a complete appellate record." (*Id.*) He alleges that Judge Ford also failed to provide a "missing transcript" hearing before Judge Sulman, further resulting in an incomplete appellate record. (*Id.* at 5.) He also claims "systematic record manipulation" by Judge Sulman after Greenaway requested the transcript for the rulings allegedly made by Judge Sulman, but was told there was no record of the hearing. (*Id.* at 13.) He further alleges Judge Ford demonstrated bias against him by making hostile statements personally attacking him on January 31, 2023, during a Contempt of Custody hearing, which places "her actions outside the scope of judicial immunity." (*Id.*) Judge Ford ultimately issued an Order on September 14, 2023, granting Prentice's petition to modify the custody of N.G.,[5] "giving shared legal custody to both parents, except in the areas of education, evaluation, and educational placement, for which Ms. Prentice was given sole legal custody," which Greenaway claims stripped "his fundamental parental rights in educational matters despite evidence of his active advocacy." (*Id.*) He claims he "has exhausted all available state remedies prior to filing

---

[4] The public record reveals that on October 19, 2022, Prentice filed petitions to modify custody and for contempt. *See Greenaway*, 0C1213453.

[5] The public record corroborates that on this date, Judge Ford entered a Final Order. *See Greenaway*, 0C1213453.

this action." (*Id.* at 14.) Specifically, he asserts that the Superior Court of Pennsylvania issued a

final order on November 26, 2024, in Case No. 2630 EDA 2023, denying his Motion to Reopen,

"explicitly stating it no longer had jurisdiction pursuant to 42 Pa.C.S.A. § 5505." (*Id.*) A review

of the public record also reveals that Greenaway appealed Judge Ford's September 14, 2023,

Order modifying custody of N.G., and the decision of the trial court was affirmed. *See Prentice*

*v. Greenaway*, 2630 EDA 2023, 2024 WL 2874298, (Pa. Super. Ct. June 7, 2024). The Superior

Court outlined the custody modifications ordered by the trial court, including that Prentice shall

have:

> … sole legal custody of the child as to decisions concerning the child's education,
> evaluation, and placement. Father shall be welcome at all IEP meetings and may contact
> the school, but Mother may solely sign all permission forms and all IEP forms for the
> Child's placement and education. Mother may also sign any forms required for
> evaluation of the Child at CHOP for autism or any other suspected educational,
> emotional, or physical impediment to learning for which the child may need evaluation.
> Both Mother and Father are to be provided all results of these evaluations and protocols,
> but Father may not interfere with the execution of same.

*Id.* at *2.

The public record also reveals that Greenaway raised many of the same challenges in his

state court appeal that he also raises in this lawsuit, such as the alleged missing transcripts and

documents resulting in an incomplete appellate record and Judge Ford's bias against him, which

the Court addressed in its decision affirming the trial court. *Id.* at *3-4.

As a result of these events, Greenaway alleges he has suffered emotional distress and was

denied his right to participate in N.G.'s educational decisions. (*Id.* at 17.) He also claims N.G.

has been denied his rights to a free appropriate public education and equal access to education,

suffering emotional distress and a loss of educational opportunities. (*Id.* at 17, 19.) Greenaway

brings claims for a denial of his due process and equal protection rights under the Fourteenth

Amendment and conspiracy to interfere with his civil rights. (*Id.* at 16-17, 23-24.) Greenaway

6

also brings claims for violations of the IDEA, FERPA, the Americans with Disabilities Act

("ADA"), Section 504 of the Rehabilitation Act ("RA"), as well as claims under state law. (*Id.*

at. 18-21, 27-28). He seeks money damages, and injunctive and declaratory relief. (*Id.* at 14, 27-

29.)

## II.    STANDARD OF REVIEW

The Court grants Greenaway leave to proceed *in forma pauperis* because it appears that

he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. §

1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether

a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher

v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v.

Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will

accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the

plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible

claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other

grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory

allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Greenaway is proceeding *pro se*, the Court construes his allegations liberally.

*Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704

F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when

the complaint has failed to name it." *Id.*  However, "pro se litigants still must allege sufficient

7

facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Section 1915 also requires the dismissal of claims for monetary relief brought against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also Rauso v. Giambrone*, 782 F. App'x 99, 101 (3d Cir. 2019) (*per curiam*) (holding that § 1915(e)(2)(B)(iii) "explicitly states that a court shall dismiss a case 'at any time' where the action seeks monetary relief against a defendant who is immune from such relief"). Moreover, "[w]ith respect to affirmative defenses[] . . . dismissal is proper if application of the defense is apparent on the face of the complaint; [the Court] may also look beyond the complaint to public records, including judicial proceedings." *Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120 n.3 (3d Cir. 2017). In other words, a district court may raise the issues of *res judicata* and collateral estoppel *sua sponte* when the issue is clearly presented by the complaint. *See, e.g., Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995) ("Nothing ... suggests that an affirmative defense appearing on the face of a complaint may not be the basis for a sua sponte dismissal under section 1915(d) [section 1915(e) as amended] prior to service of the complaint."); *Dantzler v. Young*, No. 21-4794, 2021 WL 5235285, at *3 (E.D. Pa. Nov. 9, 2021) (finding the elements of Pennsylvania's collateral estoppel rule applied on statutory screening and dismissed Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)).

8

## III.   DISCUSSION

### A.   Claims on Behalf of N.G.

As an initial matter, several of Greenaway's claims are based on injuries suffered by N.G. in violation of the IDEA, the ADA, the RA, and state law.  Greenaway lacks standing, as he may not raise these claims based on injuries sustained by another.  *See, e.g., R.S. v. Butler Cnty., Pa.*, No. 16–3194, 2017 WL 2787615, at *3 (3d Cir. June 27, 2017) (affirming dismissal of parents' Rehabilitation Act and ADA claims based on their son's disability because the complaint contained no factual allegations from which it could be inferred that the parents were personally subjected to discrimination because of their son's disability) (citation omitted); *Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" (quotations omitted)); *Woodruff v. Hamilton Twp. Pub. Sch.*, 305 F. App'x 833, 836 (3d Cir. 2009) ("With the exception of an IDEA action on their own behalf, [parents] may not represent [their minor child] in the federal courts in this [C]ircuit." (citing *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991)); *Osei–Afriyie*, 937 F.2d at 882-83) (a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself).  Accordingly, any claims Greenaway brings based on violations of the ADA, the RA, and any other claims brought seeking relief for harm allegedly sustained by N.G. will be dismissed without prejudice.

### B.   FERPA

Greenaway's alleges violations of FERPA related to N.G.'s educational records. (*See* Compl. at 11-12, 15-16, 21-23.)  Section 1232g of FERPA prohibits the federal funding of educational institutions that have a policy denying parents of students the right to review the education records of their children, or that do not provide parents an opportunity to challenge their children's educational records.  However, FERPA does not give rise to a private cause of

action or create rights that are enforceable under 42 U.S.C. § 1983. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002) ("[W]e have never before held, and decline to do so here, that spending legislation drafted in terms resembling those of FERPA can confer enforceable rights."); *see also Millington v. Temple Univ. Sch. of Dentistry*, No. 04-3965, 2006 WL 83447, at \*4 (E.D. Pa. Jan. 9, 2006) ("Because FERPA does not contain either an express or implied private right of action and cannot be enforced by § 1983, Millington cannot state a claim under FERPA."). Therefore, Greenaway's FERPA claims must be dismissed.

## C.    Claims Against Judge Ford and Judge Sulman

Greenaway's claims against Judge Ford and Judge Sulman also may not proceed. Judges are entitled to absolute immunity from civil rights claims based on their acts or omissions taken within their judicial capacity, as long as they do not act in complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *see also Harvey v. Loftus*, 505 F. App' x 87, 90 (3d Cir. 2012) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others. *See Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Likewise, "grave procedural errors," "conducting a proceeding in an informal and ex parte manner," or acting "unfair[ly] or controversial[ly]" will not defeat absolute judicial immunity. *Gallas*, 211 F.3d at 769 (citations and internal quotation marks omitted). Although judicial immunity previously applied only to damages claims, "[i]n 1996, Congress amended 42 U.S.C. § 1983 to provide that 'injunctive relief shall not be granted' in an action brought against 'a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a

10

declaratory decree was violated or declaratory relief was unavailable.'" *Azubuko v. Royal*, 443

F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*) (quoting § 1983); *see also Brandon E. ex rel.*

*Listenbee v. Reynolds*, 201 F.3d 194, 197-98 (3d Cir. 2000) (observing that the 1996 amendment

"implicitly recognizes that declaratory relief is available in some circumstances, and then limits

the availability of injunctive relief to circumstances in which declaratory relief is unavailable or

inadequate").

      Greenaway claims that during the underlying custody proceedings, Judge Ford

suppressed critical documents and failed to provide a missing transcript from a hearing before

Judge Sulman, which deprived him of "his right to a complete appellate record." (Compl. at. 5,

13.) At most, these allegations reflect Greenaway's view that the rulings were wrong, unfair, or

even inappropriate, but they do not defeat absolute judicial immunity. *Gallas*, 211 F.3d at 769

(stating that a judge retains absolute immunity where acts are challenged as "unfair" or where

"gross procedural errors" are made). The actions alleged by Greenaway were taken within Judge

Ford's judicial capacity as a neutral arbiter where she unquestionably could exercise jurisdiction

as a Court of Common Pleas Judge. *See Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir.

2000) ("Generally . . . 'where a court has some subject matter jurisdiction, there is sufficient

jurisdiction for immunity purposes.'") (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th

Cir. 1997)). His claims against Judge Sulman related to a missing transcript and the rulings

allegedly made by Judge Sulman also fall within the protection of judicial immunity. *See Lee v.*

*Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at \*4 (3d Cir. Sept. 8, 2023) ("But even

accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte*

are not stripped of their judicial immunity.) Accordingly, Greenaway's claims against Judges

Ford and Sulman are barred by judicial immunity and will be dismissed with prejudice as

amendment would be futile. *See Mikhail v. Kahn*, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2014)

(concluding that judges who presided over protection from abuse, custody, and divorce

proceedings were entitled to immunity because acts were taken in judicial capacity and plaintiff

did not show an absence of jurisdiction, and immunity applied despite allegations of bad faith

and conspiracy), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) (*per curiam*). Greenaway's state claims

against the Judges fail for the same reason. *See Palamar v. Clifford*, 343 A.3d 767, 2025 WL

1732407, at *4 (Pa. Commw. Ct. 2025) ("Accepting the allegations in Palamar's petition for

review as true, her claims challenge judicial acts that Judge Clifford performed while possessing

subject matter jurisdiction over her child custody case. Thus, judicial immunity bars Palamar's

suit for civil damages.").

Nor is there any basis for a claim against the Judges in their official capacities, because

such claims are essentially improper claims against the Commonwealth itself. *See, e.g., Will v.*

*Michigan State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials

acting in their official capacities are 'persons' under § 1983"); *Benn v. First Judicial Dist. of Pa.*,

426 F.3d 233, 241 (3d Cir. 2005) (state courts in Pennsylvania share in the Commonwealth's

Eleventh Amendment immunity); *Parker v. Lehigh Cnty. Domestic Relation Court*, 621 F. App'x

125, 128 (3d Cir. 2015) (*per curiam*) ("As [Eleventh Amendment] immunity extends to the

component districts of Pennsylvania's unified judicial system, it shields the Family Court from

. . . suit."). To the extent Greenaway claims to seek prospective injunctive relief against the

Judges in their official capacity under *Ex Parte Young*, his claims fail because he has not alleged

that the Judges are committing an ongoing violation of law, as opposed to past violations based

on their handling of the custody case. *See Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011)

("[A] state employee may be sued in his official capacity only for prospective injunctive relief,

because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotations omitted); *see also Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. & Indus.*, 985 F.3d 189, 193-94 (3d Cir. Jan. 12, 2021) (explaining that the exception in *Ex Parte Young* is narrow and "requires [the Court] to conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and whether it seeks relief properly characterized as prospective").

Further, to the extent Greenaway claims his injuries were caused by the state court judgment, or by Defendants' adhering to such judgment, and is seeking prospective relief to invalidate the state court decision, the *Rooker-Feldman* doctrine bars his claims. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, the *Rooker-Feldman* doctrine, which prohibits district courts from functioning like an appellate court to review state judgments, bars "(1) cases brought by state-court losers (2) complaining of injuries caused by state-court judgments (3) rendered before the district court proceedings commenced and (4) inviting district court review and rejection of those judgments." *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 458 (3d Cir. 2019) (cleaned up); *see also Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (The *Rooker-Feldman* doctrine is jurisdictional, precluding a loser in state court from challenging a judgement entered in state court, "based on the losing party's claim that the state judgment itself violates the loser's federal rights"). Since a portion of Greenaway's Complaint can be understood to challenge the state court's final judgment and request invalidation of that judgment, *i.e.*, the custody decision, on the basis that the ruling caused him harm, (*see, e.g.*, Compl. at 23-24 (describing due process claim based on alleged judicial errors committed by Judge Ford in connection with her ruling and alleging the ruling violates parental rights); *id.* at 27 (asking to

vacate "all custody orders entered by Judge Holly Ford" including the one grating Prentice "sole

legal custody over educational matters"), the Court lacks jurisdiction under the *Rooker-Feldman*

doctrine over this aspect of his case. *See generally Stern v. Nix,* 840 F.2d 208, 212 (3d Cir.

1988) (explaining that the complaint in question was merely a "skillful attempt to mask the true

purpose of the action, which essentially is to reverse the judicial decision [of the state court]").

### D.    Section 1983 Conspiracy Claims and Individual Claims Against Prentice

Greenaway's constitutional claims against Prentice are not plausible because she is not a

state actor for purposes of § 1983. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir.

1995) (explaining that state action is a "threshold issue" for § 1983 claims). "Whether a

defendant is acting under color of state law – *i.e.*, whether the defendant is a state actor –

depends on whether there is "such a close nexus between the State and the challenged action'

that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*,

423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). In assessing whether a private

party's action constitutes state action the Court will consider: "(1) whether the private entity has

exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the

private party has acted with the help of or in concert with state officials; and (3) whether the state

has so far insinuated itself into a position of interdependence with the acting party that it must be

recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646

(3d Cir. 2009) (internal quotations and alteration omitted).

None of those criteria is met here. Prentice, as the opposing party in a lawsuit and the

mother of the child at the center of the custody dispute, is a private individual and accusations

that she has alienated the child from Greenaway or did not consult him in N.G.'s educational or

evaluation decisions during the course of state custody proceedings does not make her a state

actor for purposes of § 1983. *See Humphrey v. Pa. Ct. of Common Pleas of Phila.*, 462 F. Supp.

14

3d 532, 536 (E.D. Pa. 2020) (dismissing § 1983 claims against mother who gained custody of child in lawsuit brought by father); *see also Hepfl v. Boot*, No. 21-0064, 2021 WL 1701801, at *2 (W.D. Pa. Apr. 8, 2021) (dismissing *pro se* plaintiff's § 1983 claims against his ex-girlfriend (and the mother of his child) on the basis that she was a private individual and not a state actor), *report and recommendation adopted*, 2021 WL 1700043 (W.D. Pa. Apr. 29, 2021).

Nor can Prentice be considered a state actor based on Greenaway's allegations of conspiratorial conduct because Greenaway has failed to state a conspiracy claim under § 1983. Greenaway attempts to assert his § 1983 conspiracy claim based his allegation that Defendants were "involved in a coordinated effort" to, *inter alia*, suppress evidence, make false statements in judicial proceedings, and exclude him from his parental rights. (Compl. at 16-17.) As an initial matter, a "bare assertion of conspiracy" does not suffice to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Furthermore, "'[a] conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'" *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (*per curiam*) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990)). Rather, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). Greenaway's allegations of conspiracy are essentially predicated on Prentice's wins in state court, alleged irregularities in those proceedings, and the other Defendants management of N.G.'s situation during the course of the custody battle. Greenaway has not pleaded any facts that plausibly suggest a meeting of the minds between Prentice, Judge Ford, Judge Sulman, and the other defendants. *See Twombly*,

550 U.S at 556 (holding that a plaintiff claiming conspiracy must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement"). The Complaint sets forth merely a "conclusory allegation of agreement at some unidentified point[, which] does not supply facts adequate to show illegality." *Id.* at 557. Specifically, Greenaway has failed to allege any facts to support a conspiracy, such as the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy. *See, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989) ("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494 (2000). The mere fact that Judge Ford ruled in Prentice's favor, and the other defendants abided by such ruling, is not sufficient to allege plausibly the existence of a conspiracy. *See generally Dennis*, 449 U.S. at 28 ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."); *Great W. Mining,* 615 F.3d at 179 (holding that conspiracy claim was not plausible where plaintiff "failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy, or the object of the conspiracy"). Greenaway's allegations merely assume the existence of a conspiracy rather than alleging one and therefore do not state a claim for conspiracy under § 1983.

    **E.**    **Remaining Claims**

16

The essence of Greenaway's remaining claims is best described as a violation of due process under § 1983, the IDEA,[6] and state law related to not being involved in, or consenting to, N.G.'s education, evaluation, and placement decisions, including IEP meetings, and a failure to maintain and provide complete educational records.[7] (*See* Compl. at 18-19, 23.)

---

[6] "Under the IDEA, a state receiving federal educational funding must provide children within that state a 'free appropriate public education' (FAPE)." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65 (3d Cir. 2010). "The right to a FAPE ensures that students with special education needs receive the type of education that will 'prepare them for further education, employment, and independent living.'" *Ferren C. v. Sch. Dist. of Philadelphia*, 612 F.3d 712, 717 (3d Cir. 2010) (quoting 20 U.S.C. § 1400(d)(1)(A)). "A school district provides a FAPE by designing and implementing an individualized instructional program set forth in an Individualized Education Plan (IEP), which must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 729-30 (3d Cir. 2009) (internal quotations omitted). The IDEA also provides procedural safeguards to parents and students should disputes arise. Its provisions afford parents of a disabled child the opportunity to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child. . . ." 20 U.S.C. § 1415(b)(6)(A). States must adopt procedures affording "[a]n opportunity for any party to present a complaint" with respect to those matters. 20 U.S.C. §§ 1415(a), (b)(6)(A). Once they file, parents "shall have an opportunity for an impartial due process hearing. . . ." 20 U.S.C. § 1415(f)(1)(A). In Pennsylvania, the Office of Dispute Resolution is responsible for conducting IDEA due process hearings. *See* 22 Pa. Code § 14.162. An aggrieved parent may appeal the hearing officer's decision by bringing a civil action in federal court. *See* 20 U.S.C. § 1415(i)(2)(A).

[7] Greenaway also brings an equal protection claim that Defendants treated him "differently from similarly situated parents without rational basis." (Compl. at 24.) "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Because Greenaway does not claim discrimination based on membership in a protected class, the Court liberally construes his allegations as asserting a claim based on a "class of one" theory, in which he must allege he was intentionally treated differently from others similarly situated and that there was no rational basis for the treatment. *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"); *see also, generally, Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir.

"Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 117 (3d Cir. 1997). If Greenaway does not possess Article III standing, this Court lacks subject matter jurisdiction to hear the merits of his claims. *See Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 188 (3d Cir. 2006). In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), the Supreme Court held that to satisfy Article III's standing requirements, a plaintiff must show (1) he has suffered an injury-in-fact that is both concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotations omitted).

Additionally, an understanding of the IDEA's structure informs whether Greenaway has suffered an injury-in-fact, that would permit him to bring a claim against the School District

---

2008) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'").

Greenaway generally asserts he was treated different from other similarly situated parents and references a policy of communicating with "only the parent who raises" the child made by Defendant Harrow, but does not allege any details about this claim. Without more specific factual allegations as to the allegedly similarly situated parties and how he was treated differently on an irrational basis, his claim fails. *See, e.g., Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (general allegations that plaintiff was treated "less favorably" are not sufficient); *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege facts sufficient to make plausible the existence of such similarly situated parties."). The Court further notes that in light of the extensive procedural history and background in this case specific to Greenaway's child custody case, a similarly situated party may be difficult to allege.

18

under that statute.[8]  "[T]he Supreme Court has directed that a school district's liability for

violations of the IDEA is a two-fold inquiry: (1) [h]as the school district complied with the

procedures set forth in IDEA?; and (2) [h]as the school district fulfilled its obligation to provide

the student with a FAPE?"  *D.B. v. Gloucester Twp. Sch. Dist.*, 489 F. App'x 564, 566 (3d Cir.

2012) (quoting *C.H.,* 606 F.3d at 66).  Not every procedural violation of the IDEA constitutes

denial of a FAPE.  The United States Court of Appeals for the Third Circuit has held that while

"it is important that a school district comply with the IDEA's procedural requirements, rather

than being a goal in itself, such compliance primarily is significant because of the requirements'

impact on students' and parents' substantive rights."  *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d

553, 565 (3d Cir. 2010).  In other words, "[a] procedural violation constitutes a denial of a FAPE

when that violation causes 'substantive harm' to the child or her parents."  *D.B.*, 489 F. App'x at

566 (quoting *C.H.*, 606 F.3d at 66); *see also J.A. v. Monroe Twp. Bd. of Educ.*, No. 18-9580,

2019 WL 1760583, at *1 (D.N.J. Apr. 22, 2019) (citing *G.N. v. Board of Educ. of Twp. of

Livingston*, 309 F. App'x 542, 546 (3d Cir. 2009)) (same).  In that regard, the Third Circuit has

held that a procedural violation pursuant to IDEA "committed during the formulation of a child's

IEP is actionable only if that violation: (1) impedes the child's right to a [FAPE]; (2)

significantly impedes the parents' opportunity to participate in the decisionmaking process; or

(3) causes a deprivation of [educational] benefits."  *G.N.*, 309 F. App'x at 546 (citing *Winkelman

ex rel. Winkelman v. Parma City Sch. Dist.,* 550 U.S. 516, 526 (2007) (citing 20 U.S.C. §

1415(f)(3)(E)(i) & (ii))).  A plaintiff "alleging only that a school district has failed to comply

---

[8] Although Greenaway names other defendants in his claims pursuant to the IDEA, it appears the School District is the proper defendant for such claims. *See C.H.*, 606 F.3d at 66 ("The IDEA establishes a private cause of action against a school district that fails to abide by its legal obligations.").

with a procedural requirement of the IDEA, independent of any resulting deprivation of a FAPE, may only seek injunctive relief for prospective compliance." *See C.H.*, 606 F.3d at 66 (citing *P.P. ex rel. Michael P.,* 585 F.3d at 738).

As an initial matter, Greenaway complains that decisions related to N.G.'s education, evaluation, and educational placement were made without his consent or participation, but he lacks legal authority to make such a claim. His Complaint alleges that Prentice was given sole legal custody in the areas of N.G.'s education, evaluation, and educational placement on September 14, 2023, by the trial court in the state custody case. (*See* Compl. at 13.) A review of public records confirms the decision of the trial court was affirmed by the Superior Court, which included that Greenaway "was welcome at all IEP meetings and may contact the school, but [Prentice] may solely sign all permission forms and all IEP forms for the [N.G.]'s placement and education." *See Prentice*, 2024 WL 2874298, at *2. "[N]othing in the IDEA overrides states' allocation of authority as part of a custody determination." *Carpenter v. Pennell Sch. Dist. Elementary Unit*, No. 01-6270, 2002 WL 1832854, at *3 (E.D. Pa. Aug. 9, 2002) (quoting *Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001), *aff'd sub nom.*, *Carpenter v. Child. & Youth Servs.*, 64 F. App'x 850 (3d. Cir. 2003). Therefore, because Prentice has sole custody in the areas of N.G.'s education, evaluation, and educational placement, Greenaway lacks the legal authority to claim his consent or participation in those areas was required. In other words, the lack of custody in these areas deprives him of standing to proceed on his IDEA claims.

Greenaway also appears to assert a procedural IDEA claim concerning access to N.G.'s records and notice of the educational decisions made. But even assuming that the School District ran afoul of IDEA's procedural requirements, "procedural violation[s] [are] actionable under the

IDEA only if [they] ... seriously deprive[d] [Greenaway] of [his] participation rights." *Luo v. Owen J. Roberts Sch. Dist.,* No. 25-1073, 2025 WL 2427188, at *2 (3d Cir. Aug. 22, 2025) (quoting *D.S.,* 602 F.3d at 565). Based on his own allegations, Greenaway's opportunity to participate in the decision-making process of N.G.'s educational and placement decisions has already been excluded by the state court and Prentice has sole custody of these areas. (*See* Compl. at 13.) Although Greenaway is allowed to attend IEP meetings and contact the school, to sufficiently allege a procedural violation under the IDEA, his right to participate in N.G.'s educational decisions must be "significantly impede[d]," *C.H.,* 606 F.3d at 66, or he must allege *a serious deprivation. Luo,* 2025 WL 2427188, at *2 (emphasis added). Further, compliance with the IDEA's procedural requirements is significant because of the requirements' impact on "parents' substantive rights." *D.S.*, 602 F.3d at 565. Because he does not have any participation rights in the decision-making process of N.G.'s education or placement to be deprived of, he has not suffered an injury-in-fact and cannot sufficiently allege facts of a procedural IDEA violation. *See Fuentes v. Bd. of Educ. of City of New York*, 569 F.3d 46, 47 (2d Cir. 2009) (internal quotations and citation omitted) (where biological parent "does not have the authority to make educational decisions" on behalf of a child, the parent lacks standing to sue under the IDEA). Therefore, the Court concludes that Greenaway has failed to establish the concrete and particularized injury, *i.e.,* a deprivation of his participation rights in N.G.'s educational decisions, in violation of the IDEA necessary for standing and for this Court to review the merits of his claim. *See Lujan,* 504 U.S. at 578 (explaining that an individual can enforce a violation of procedural rights conferred by statute provided that "the party seeking review ... himself [has] suffered an injury"); *see also Warth v. Seldin,* 422 U.S. 490, 498 (1975) ("In essence the

question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").

Furthermore, to the extent any claims remain related to his deprivation of parental rights or exclusion in N.G.'s evaluations, educational decisions, and placement, those claims are barred by collateral estoppel. Federal courts look to state law in determining whether to apply collateral estoppel, also referred to as issue preclusion. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985). Collateral estoppel bars the re-litigation of a previously litigated issue. *See Vignola v. Vignola*, 39 A.3d 390, 393 (Pa. Super. Ct, 2012). Collateral estoppel "is a broader concept than *res judicata* and operates to prevent a question of law or issue of fact which has once been litigated and fully determined in a court of competent jurisdiction from being relitigated in a subsequent suit." *Id.* (citation omitted.) Under Pennsylvania law, the following conditions must be met in order to invoke issue preclusion: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action; and (5) whether the determination in the prior proceeding was essential to the judgment. *Id.*

Upon review of the Complaint and the Superior Court's Memorandum affirming the trial court's Order modifying custody of N.G., *see Prentice*, 2024 WL 2874298, which Greenaway unsuccessfully appealed, it is clear that all the required elements for application of the doctrine of collateral estoppel are met with regard to the extent of Greenaway's rights to participate in matters related to N.G.'s education. The underlying child custody case, which began over ten

years ago in 2015, has fully litigated these issues.  (*See* Compl. at 9.)  In 2017, N.G. was

diagnosed with Autism, which appears to be the event from which many of Greenaway's

allegations stem.  (*Id.* at 10.)  Greenaway's allegations challenge how Prentice, the School

District, the Bureau of Special Education, the School, and their employees, namely Defendants

Conklin, Davies, Clark, Harrow, and Sexton, handled evaluations for N.G. that led to his Autism

diagnosis and educational programs he was placed in as a result of his diagnosis.  (*Id.* at 10-15.)

Since October 2017, Prentice "was granted sole authority over school-related decisions" for N.G.

in the underlying child custody case, although Greenaway alleges "this authority did not extend

to medical evaluations, such as those for Autism."  (*Id.* at 10.)  However, Judge Ford ultimately

issued an Order on September 14, 2023, granting Prentice's petition to modify the custody of

N.G. "giving shared legal custody to both parents, except in the areas of education, evaluation,

and educational placement, for which Ms. Prentice was given sole legal custody," which

Greenaway claims stripped "his fundamental parental rights in educational matters despite

evidence of his active advocacy."  (*Id.* at 13.)  A review of the public record also reveals that

Greenaway appealed Judge Ford's September 14, 2023, Order modifying custody of N.G., and

the decision of the trial court was affirmed.  *See Prentice*, 2024 WL 2874298.

      Based on the public record and Greenaway's own allegations, it is therefore clear that the

issue of his custody rights vis-à-vis evaluations, educational decisions, and placement was fully

litigated in the custody matter.  Greenaway is therefore precluded in this case from arguing that

his rights were violated by his non-inclusion in matters that, per the state-court judgment, he had

lost the right to be involved in.  Because this is the crux of his claims, *i.e.*, that his rights were

violated by the issuance of and adherence to the custody order limiting his involvement,

collateral estoppel precludes him from relitigating these matters, and his claims fail as

implausible. *See Dreibelbis v. Young*, 351 F. App'x 711, 714 (3d Cir. 2009) ("The state court

determined that CYS' actions properly conformed with the court's order and that Dreibelbis was

responsible for the lack of visitation due to his insistence on videotaping. These determinations

have preclusive effect."); *see, e.g, In re R.H.M.*, 303 A.3d 146, 153 (Pa. Super. Ct. 2023) ("In

denying Mother's request for a protective order, the trial court credited Father's version of events

and concluded Father did not rape Mother. Thus, the issue decided in the PVSVIA case is

identical to the issue presented in the TPR case.") (internal quotations and citation omitted).

Accordingly, any remaining claims related to not being involved in, or consenting to, N.G.'s

education, evaluation, and placement decisions, and any alleged violations of his constitutional

rights or state law predicated on those decisions,[9] are barred by issue preclusion and will be

dismissed with prejudice for failure to state a claim pursuant to §1915(e)(2)(B)(ii).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Greenaway leave to proceed *in forma*

*pauperis* and dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  Leave to amend will

not be given as any attempt to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293

F.3d 103, 108, 110 (3d Cir. 2002).

An appropriate Order follows.

BY THE COURT:

KAI N. SCOTT, J.

---

[9] In any event, any remaining state law claims would fail for lack of an independent basis for subject matter jurisdiction. *See* 28 U.S.C. § 1332(a). And to the extent Greenaway is bringing claims based on any alleged failure to investigate that are not otherwise resolved for the reasons above, he has not articulated a plausible basis for such a claim. *See e.g.*, *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation.").